UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DANIEL TONEY,

       Petitioner,

v.                                          Case No. 3:18-cv-378-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## ORDER

### I. Status

Petitioner Daniel Toney, an inmate of the Florida penal system, initiated this action on March 14, 2018,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). Toney is proceeding on an amended petition (Amended Petition; Doc. 22) accompanied by a memorandum of law (Doc. 23). In the Amended Petition, Toney challenges a 2010 state court (Duval County, Florida) judgment of conviction for armed robbery and possession of a firearm by a convicted felon. Toney raises four grounds for relief. See Amended Petition at 4-6.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer in Response to Order to Show Cause (Response;

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

Doc. 6)[3] with exhibits (Resp. Ex.).[4] Toney filed a brief in reply. See Petitioner's Reply to Respondents' Answer to Petition for Writ of Habeas Corpus 2254 (Reply; Doc. 25). This case is ripe for review.

## II. Relevant Procedural History

On January 10, 2013, the State of Florida (State) charged Toney by way of Information with armed robbery (count one) and possession of a firearm by a convicted felon (count two). Resp. Ex. A at 11. Following a trial, a jury found Toney guilty as charged, with a specific finding as to both counts that Toney actually possessed a firearm during the commission of the offense. Id. at 89-91. On December 15, 2010, the trial court adjudicated Toney to be a habitual felony offender (HFO) and sentenced Toney to a term of incarceration of life in prison as to count one, with a ten-year minimum mandatory, and thirty years in prison as to count two, with a three-year minimum mandatory. Id. at 130-36, 231-33.

Toney appealed his convictions and sentence to Florida's First District Court of Appeal (First DCA). Id. at 140. In his initial brief, Toney argued that the evidence was legally insufficient to support his convictions on both counts and the trial court erred in adjudicating him as an HFO. Resp. Ex. C. On November 17, 2011, the First DCA per curiam affirmed Toney's convictions and sentences and on December 5, 2011, issued the Mandate. Resp. Ex. E.

---

[3] After Toney filed the Amended Petition, Respondents declined to file an amended response; instead, deciding to rely on their arguments as raised in the Response. Doc. 24.

[4] On October 16, 2020, the Court directed Respondents to re-submit exhibit F with the correct documents from Toney's state postconviction proceedings, Doc. 27, which Respondents did on October 21, 2020, Doc. 28.

On December 4, 2012, Toney, with the assistance of counsel, filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, Resp. Ex. F at 1-15, which he later amended on May 9, 2013 (Rule 3.850 Motion), id. at 33-48. In the Rule 3.850 Motion, Toney asserted that his counsel was ineffective for failing to:  (1) object to the presence of a sleeping juror; (2) permit Toney to testify at trial; and (3) investigate and call witnesses. Id. Following an evidentiary hearing, the postconviction court denied relief on the Rule 3.850 Motion. Id. at 103-113. On January 2, 2018, the First DCA per curiam affirmed the denial of the Rule 3.850 Motion without a written opinion and on March 7, 2018, issued the Mandate. Resp. Ex. J.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record

before the Court. Because the Court can "adequately assess [Toney's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[5] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's

---

[5] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the """opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[6] supra, at 747–748, 111 S. Ct. 2546; Sykes,[7] supra, at 84–85, 97 S. Ct. 2497.  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

---

[6] Coleman v. Thompson, 501 U.S. 722 (1991).
[7] Wainwright v. Sykes, 433 U.S. 72 (1977).

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[8] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity

---

[8] Murray v. Carrier, 477 U.S. 478 (1986).

9

of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance

10

prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Toney alleges that there was insufficient evidence presented at his trial to convict him of armed robbery and possession of a firearm by a convicted felon. Amended Petition at 4. According to Toney, the victim did not identify him; instead, she just stated that a picture of Toney looked similar to the man that robbed her. Id. Toney maintains that the receipt with his fingerprints on it should have never been used at trial because he possessed the receipts throughout the duration of a roofing job. Id. He further asserts that there was no DNA or fingerprint evidence at the scene linking him to the crime. Id.

Toney raised this issue at trial via a motion for judgment of acquittal. Resp. Ex. B at 330-32. After hearing argument from the parties, the trial court denied the motion, stating: "I think there is sufficient evidence to create a question to [sic] the jury." Id. at 332. Toney again raised this issue in his initial brief on direct appeal. Resp. Ex. C. The First DCA denied relief on this claim without issuing a written opinion. Resp. Ex. E.

To the extent that the First DCA decided the claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

---

[9] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

the evidence presented in the state court proceedings. Thus, Toney is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, the claim in Ground One is meritless. In reviewing a motion for judgment of acquittal, trial courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Gudinas v. State, 693 So. 2d 953, 962 (Fla. 1997) (quoting Taylor v. State, 583 So. 2d 323, 328 (Fla. 1991) (holding a motion for judgment of acquittal should not be granted unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law."). The Supreme Court has "made clear that Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." Coleman v. Johnson, 566 U.S. 650, 651 (2012). In particular, the Supreme Court explained:

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

Id. (citations and quotations omitted). Indeed "the only question under Jackson is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality," and the state court's determination that it was not "in turn is entitled to considerable

deference under AEDPA." <u>Preston v. Sec'y, Fla. Dep't of Corr.</u>, 785 F.3d 449, 463 (11th Cir. 2015) (quoting <u>Coleman</u>, 650 U.S. at 656).

The record reflects that on September 26, 2008, Alicia Robinson, an assistant manager for Advance America, was working when around 9:30 a.m. a male holding papers came into the store. Resp. Ex. B at 204-06. The man came to the counter, pulled out a gun, and asked Robinson where the safe was located. <u>Id.</u> at 306-07. Robinson showed him where the safe was and opened it for him, and the man took the money from the safe. <u>Id.</u> at 207, 211. According to Robinson, she was about three and a half to four feet away from the man, who wore a fitted cap with the bill of the hat lowered such that it was hard for her to see his eyes and face. <u>Id.</u> at 209, 211. The man then asked if there was any more money, and Robinson gave the man more money out of the cash register. <u>Id.</u> at 212. Robinson then unlocked the back door, through which the man fled the scene. <u>Id.</u> at 212-13. The man left behind the papers he had been holding when he first walked into the store. <u>Id.</u> at 214-15. Thereafter, Robinson called her manager and then hit the panic button, with police arriving within five minutes. <u>Id.</u> at 214.

When police arrived, Robinson showed them surveillance footage from the incident which corroborated her version of the events, although the man could not be identified from the video itself. <u>Id.</u> at 218-22, 236-64. The prosecutor introduced and played the video for the jury at trial. <u>Id.</u> Robinson described the gunman as an African American male in his late twenties or early thirties who was about 6'1" or 6'2" tall and weighed approximately 160 pounds. <u>Id.</u> at 239-42, 285. Based on her description the police had Robinson review 500 photographs of similar looking males on a computer, but she determined that none of the men in the pictures looked like the suspect. <u>Id.</u> at 223, 266-

69. Later that day, one of the investigating detectives provided Robinson with a six-picture photo lineup, from which Robinson picked out Toney's photograph from the group and wrote "this guy looks similar to the guy that robbed me." Id. at 225-27, 276-81.

Police reviewed the papers the gunman left behind at the scene, which was a tool rental agreement from Home Depot, signed on September 25, 2008, by Belinda Smith. Id. at 272-76. The document was sent to a forensic lab for further evaluation and police went to the Home Deport as part of their investigation. Police talked with Smith at her place of work, and she stated she knew Toney and he was married to her daughter. Id. at 310-11. Although a DNA analysis of the paperwork revealed nothing beyond the presence of the victim's DNA, id. at 301-02, analysts found five latent fingerprints, all of which matched Toney's prints, id. at 316-21.

Based on this record, the Court finds that a rational trier of fact could have agreed with the jury's determination that Toney was guilty. See Coleman, 566 U.S. at 651. The only eyewitness partially identified Toney as the gunman after reviewing over 500 photographs. The jury was able to view the surveillance footage from the incident. Toney's fingerprints were on the same paperwork that the gunman brought into the store and left at the scene. When viewed in a light most favorable to the State, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. The Court finds neither the jury's finding of guilt nor the state court's ruling on Toney's motion for judgment of acquittal were objectively unreasonable given these facts. While Toney may disagree with the weight of this evidence, the evidence itself was sufficient to convict him. See Heath v. Jones, 863 F.2d 815, 820 (11th Cir. 1989) (citations omitted) ("When the record reflects historical facts which support

conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant."). Accordingly, in light of the above, relief on the claim in Ground One is due to be denied.

### B. Ground Two

As Ground Two, Toney asserts that the trial court erred in adjudicating him to be an HFO. Amended Petition at 5. Toney maintains that the two prior felonies the trial court used to impose an HFO sentence were not qualifying felonies. Id. He also generally avers that the State gave no explanation for seeking the imposition of an HFO sentence. Id. Respondents maintain that Toney failed to exhaust this claim because he never raised this as a federal issue on direct appeal or in his Rule 3.850 Motion. Response at 32-34. Additionally, Respondents contend that Toney is not entitled to federal habeas relief because this claim is based on an error of state law, not the federal Constitution or law. Id. at 34.

The record reflects that on direct appeal Toney argued that the trial court erred in adjudicating him as an HFO. Resp. Ex. C. However, Toney did not raise this issue as a violation of the federal Constitution; instead, he relied solely on Florida law in support of his argument. Id. at 10-12. The Court finds that Toney failed to fairly present this claim as a federal constitutional challenge in state court, which deprived the state court of a meaningful opportunity to review this claim. See Baldwin, 541 U.S. at 29. As such, relief on this claim is due to be denied as the claim is not exhausted. Even assuming Toney's claim is not procedurally barred, Toney is not entitled to federal habeas relief. To the extent Toney asserts that the trial court erred when it adjudicated him to be an HFO, the claim presents an issue purely of state law not cognizable on federal habeas review. The

purpose of a federal habeas proceeding is to review the lawfulness of Toney's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (holding errors of state law are not cognizable in federal habeas review); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Thus, insofar as Toney's claim in Ground Two alleges the trial court erred under Florida law when it sentenced him as an HFO, such claim provides no basis for federal habeas relief. See Estelle, 502 U.S. at 67-68; Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) ("In the area of state sentencing guidelines in particular, we consistently have held that federal courts can not [sic] review a state's alleged failure to adhere to its own sentencing procedures."). Accordingly, for the above stated reasons, Toney is not entitled to federal habeas relief and his claim in Ground Two is due to be denied.

### C. Ground Three

Next, although the title of this claim for relief alleges that the trial court failed to permit him to testify, in the body of the argument on the claim, Toney argues that his counsel was deficient for advising him not to testify. Amended Petition at 6. Toney contends that his counsel failed to advise him that an alibi defense "would not be brought up in trial." Id. Toney also alleges that his counsel failed to call witnesses in support of an alibi defense. Id.[10]

---

[10] Toney raises counsel's failure to call witnesses as Ground Four of the Amended Petition; therefore, the Court will address the witness claim in Ground Four rather than as part of Ground Three.

Toney raised this claim of ineffective assistance of counsel in his Rule 3.850

Motion. Resp. Ex. F at 40-41. Following an evidentiary hearing, the postconviction court

denied relief on this claim, explaining in pertinent part:

> Defendant testified at the evidentiary hearing that trial counsel
> advised him not to testify because of his criminal background.
> Defendant further testified that he waived that right due to the
> advice of counsel regarding his background. As to the first
> prong accounted in Simon,[11] Defendant had a colloquy with
> the trial court in which the trial court instructed him that it was
> his right to testify. Defendant voluntarily agreed to waive his
> right to testify. As to the second prong, the Court finds counsel
> was not ineffective for rendering this advice to Defendant. It is
> reasonable for an attorney to advise a client to refrain from
> testifying if certain elements of their criminal background may
> become known. Beasley v. State, 18 So. 3d 473, 496 (Fla.
> 2009) ("Placing a defendant on the stand to testify is always a
> tactical decision because the State can ask the defendant
> about prior felony convictions. In choosing whether to testify,
> a defendant must weigh the benefits and detriments of
> allowing this information to be supplied to the jury.").
> Accordingly, Defendant has not met his burden and is not
> entitled to relief.

Id. at 108 (record citations omitted). The First DCA per curiam affirmed the denial of relief

on this claim. Resp. Ex. J.

To the extent that the First DCA decided the claim on the merits, the Court will

address the claim in accordance with the deferential standard for federal court review of

state court adjudications. After a review of the record and the applicable law, the Court

concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and was not based on an unreasonable determination of the facts in light of

---

[11] Simon v. State, 47 So. 3d 883 (Fla. 3d DCA 2010).

the evidence presented in the state court proceedings. Thus, Toney is not entitled to relief on the basis of this claim.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, the claim is without merit. Criminal defendants have a constitutional right to testify on their own behalf. Rock v. Arkansas, 483 U.S. 44, 51-53 (1987). That right is personal and fundamental, meaning it cannot be waived by either the court or counsel, but only by the defendant. United States v. Teague, 953 F.2d 1525, 1532 (1992). Counsel gives ineffective assistance with respect to a defendant's right to testify where counsel "has refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant of his right to testify and that the final decision belongs to the defendant alone." Gallego v. United States, 174 F.3d 1196, 1197 (11th Cir. 1999). "Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf." Teague, 953 F.2d at 1534. Notably, an attorney does not render deficient performance by strategically advising a defendant not to take the stand. Id. at 1533 ("[I]f defense counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify."); United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001) (counsel could reasonably advise defendant not to testify out of concern that he would be impeached with prior convictions under Fed. R. Evid. 609).

The record reflects that before the trial commenced, the trial court advised Toney that the existence of his prior felony convictions would not be brought up unless he

testified. Resp. Ex. B at 184. The trial court also held a thorough colloquy with Toney after the State rested, during which it again advised Toney that if he took the stand the jury would know the number of his prior felony convictions but not the nature unless he testified incorrectly about how many felony convictions he had. Id. at 332-35. The trial court also specifically informed Toney that it was his right to choose whether or not to testify. Id. at 332-33. Based on this record, Toney was aware of the manner in which his prior convictions could be used and understood that it was his right alone to decide whether or not to take the stand.

Regarding Toney's claim that counsel failed to advise him that there would be no alibi defense presented, Toney sat through the presentation of the State's case-in-chief and before the trial court conducted its colloquy with Toney, defense counsel rested. Id. at 332. As such, Toney knew his counsel was not going to present an alibi defense, yet still chose not to testify after the trial court advised him of his rights. Therefore, counsel's failure to present an alibi defense does not render Toney's decision not to testify involuntary where Toney was well aware of the lack of evidence in support of his alleged alibi prior to making his decision. Moreover, the Court notes that Toney has not alleged that his counsel refused to permit Toney to testify or failed to inform him it was his right to take the stand. Instead, Toney merely alleges that counsel advised him not to testify, he accepted that advice, and now, in hindsight, disagrees with that advice. However, counsel's advice that Toney not take the stand in order to prevent the jury from knowing his criminal background is not an unreasonable tactical decision. See Teague, 953 F.2d at 1533; Willis, 273 F.3d at 598. The Court notes that "[t]he Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved,"

and "[i]ntensive scrutiny and second guessing of attorney performance are not permitted."
Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) (citing Strickland, 466 U.S. at 689-90)). Here, Toney has failed to present evidence that demonstrates counsel's advice was unreasonable, particularly given that the record establishes Toney independently made this decision knowing no alibi defense would be presented. For these reasons, relief on the claim in Ground Three is due to be denied.

### D. Ground Four

Lastly, Toney argues that his counsel failed to call alibi witnesses. Amended Petition at 7. Although he does not name the witnesses, Toney claims there were twenty-one possible alibi witnesses who could have testified that Toney was forty-five minutes away from the crime scene working and who could explain why his fingerprints were on the document the State used as evidence against him. Id.

Toney raised a similar claim in his Rule 3.850 Motion.[12] Resp. Ex. F at 41-46. In denying relief on this claim, the postconviction court wrote:

> 1.    Mr. Cunningham
>
> Defendant alleges counsel was ineffective for not calling Mr. Cunningham, as he would have testified Defendant was working on the roof at the time of the crime. Further, Mr. Cunningham would have testified to how rental receipts were handled.
>
> The Court finds counsel was not deficient for failing to present the testimony of Mr. Cunningham at trial. While Mr. Cunningham testified during the evidentiary hearing that Defendant was on the roof at the time of the crime, he could

---

[12] In the Rule 3.850 Motion, Toney alleged his counsel should have called the following witnesses:  Troy Cunningham, Belinda Smith, Rodney Jones, Gabriel Chinas, Gregory Richardson, Troy Roberts, Chad Griffis, James West, Henry Butcher, William Bowen, David McDonald, Michael Harsh, William Taylor, Gordon Waddell, Austin Ellis, John West, and Teddy Taylor. Resp. Ex. B at 43.

not recall when exactly he worked on the roof. In addition, Mr. Cunningham did not present any testimony as to how the receipts were handled. Mr. Bossen[13] testified at the evidentiary hearing that he tried to contact Mr. Cunningham prior to trial but was unsuccessful. Further, Mr. Bossen testified there were issues in presenting an alibi defense; mainly, the receipt containing Defendant's fingerprints was found at the scene of the crime and Ms. Belinda Smith told police that Defendant was the individual in the security video. As detailed below, Mr. Bossen could not find witnesses to corroborate Defendant's alibi after investigation. Thus, it was reasonable for trial counsel to forego presenting this testimony. Defendant is not entitled to relief.

2.    Ms. Smith

Defendant alleges Ms. Smith would have testified to how she handled the receipts for the roofing job. Defendant also alleges she would have testified that the night after the robbery, Defendant called her to tell her he could not find the receipt.

After listening to the testimony of Ms. Smith at the evidentiary hearing, the Court finds her statements would not have impacted Defendant's trial had she testified. Ms. Smith testified she was employed at the time Defendant worked on her roof; thus, she could not confirm that he was working on her roof at the time of the robbery. The only testimony she could provide was the general hours Defendant worked on her roof. Moreover, Ms. Smith testified she was not available to testify at trial. Nelson v. State, 875 So. 2d 579, 584 (Fla. 2004); see Nelson v. State, 73 So. 3d 77, 88 (Fla. 2011) (concluding witness availability integral to establish prejudice). Notably, Ms. Smith wrote a letter on behalf of Defendant for his sentencing, but never mentioned he had been working on her roof at the time the crime occurred.

Even assuming Ms. Smith had been available to testify at trial, Mr. Bossen testified Ms. Smith was a "big hurdle" for the defense because she identified Defendant in the surveillance video of the robbery scene when she viewed it with police. Thus, the Court finds it was reasonable for counsel to forego calling her as a witness at trial because her identification of Defendant was clearly harmful to the defense.

---

[13] Michael Bossen acted as counsel for Toney during a portion of the prosecution.

While Mr. Bossen did not represent Defendant at trial, he represented Defendant during a large portion of his case, and conducted most of the pretrial investigation .Thus, to now speculate why trial counsel chose not [to] call Ms. Smith would be imprudent, as Mr. Bossen explained to the Court numerous reasons why calling this witness would be detrimental to Defendant's case. Defendant is not entitled to relief.

3.      Rodney Jones; Gabriel Chinas; Gregory Richardson; Troy Wayne Roberts; Chad Griffis; James Christopher West; Henry Butcher, III; William E. Bowen, III; David McDonald; Michael Harsh; William Clifford Taylor; Gordon Waddell; Robert Austin Ellis, Jr.; John Mitchell West; and Teddy Lee Taylor

The Court granted an evidentiary hearing on this claim for Defendant to present the proposed testimony of the witnesses listed in this sub-claim. Defendant, however, chose not to call these witnesses. The Court finds that Defendant has not met his burden as to this part of the sub-claim. See Ferrell v. State, 918 So. 2d 163, 173-74 (Fla. 2005) (concluding "Ferrell 'opted to forego' the presentation of such evidence at the scheduled evidentiary hearing and thus waived the claim.")[.]

Even considering this claim, the Court finds counsel was not deficient. While Mr. Bossen was not the attorney that represented Defendant at trial, he was Defendant's attorney for the majority of the pendency of the case. At the evidentiary hearing, Mr. Bossen testified he contacted Royal America Construction and received names of individuals who worked near Defendant's roofing job on the day the crime occurred. Mr. Bossen attempted to contact Teddy Taylor, Troy Roberts, Gregory Richardson, Michael Harsh, and Gordon Waddell, as potential witnesses; however, many did not respond or offer helpful information. The Court cannot speculate as to whether Defendant's trial counsel contacted these individuals again or whether such contact would have yielded a different response. But, in general, the proposed testimony of when roofers start and end their work, which Defendant alleges in his Motion, does not persuade the Court that these witnesses would have impacted the outcome of the trial had they been called at trial to testify. Such proposed testimony also would not have foreclosed the opportunity of Defendant to have been away from the job site for a few hours on the date and at the time of the robbery. The Court finds counsel's decision

23

> not to call these witnesses did not fall below the reasonable
> standard described in <u>Strickland</u>. Accordingly, Defendant is
> not entitled to relief.

<u>Id.</u> at 109-11. The First DCA affirmed the postconviction court's denial of relief on this claim. Resp. Ex. J.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Toney is not entitled to relief on the basis of this claim.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, this claim is meritless. "'Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that federal courts will seldom, if ever, second guess.'" <u>Knight v. Fla. Dep't of Corr.</u>, 936 F.3d 1322 (11th Cir. 2019) (quoting <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995)). While Toney's trial counsel died prior to the evidentiary hearing on his Rule 3.850 Motion, Toney's earlier attorney, Michael Bossen, who represented him for almost two years, did testify at the hearing. Resp. Ex. G at 22-20. According to Bossen, he subpoenaed a construction company that was installing sewer systems in the same area where Toney alleges he was helping to repair a roof. <u>Id.</u> at 24-27. He received a list of names and attempted to contact them; including Teddy Taylor, Troy Roberts, Michael Harsh, Gordon Waddell, and Gregory Richardson;

but was unable to reach anyone. Id. at 27-28. Based on this record, it appears these witnesses were unavailable or unwilling to testify. Moreover, the Court finds Toney is speculating as to their proposed testimony, which is insufficient to warrant federal habeas relief. See Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim).

Bossen also interviewed Toney's family:  Belinda Smith, Yolanda Toney, and Troy Cunningham. Resp. Ex. G at 29-33. However, during his almost two years investigating the case, Bossen was unable to corroborate Toney's alibi and declined to file a notice of alibi because he felt he had no good faith basis to do so. Id. at 36, 39-42. Particularly as to Smith, Bossen felt she would not be a good witness to call because within days of the robbery, detectives had talked to her and she identified the man in the surveillance video as Toney. Id. at 66-69; Resp. Ex. F at 363-64. Bossen testified that when he talked with Smith about her statements, she admitted saying that to the police, Resp. Ex. F at 364, although at the evidentiary hearing, Smith attempted to clarify her statement to police, Resp. Ex. G at 67-70. Additionally, Smith testified that she was unavailable to testify at the time of trial because she was out of town and that she worked the days Toney was fixing her roof. Resp. Ex. F at 61-63, 73. Thus, she would not have been able to testify with certainty that Toney was at her house on the date and time of the robbery. Similarly, although Cunningham testified Toney was with him working on the roof at the time of the robbery, Cunningham did not know the actual dates on which they worked. Id. at 92.

In light of this evidence, the Court finds counsel's decision to not call these witnesses was reasonable, given the fact that counsel could not corroborate the alibi with

anyone other than family members, who could not give ironclad testimony in support. Indeed, calling these alibi witnesses, specifically Smith, could have opened the door to the State introducing evidence of Smith's identification of Toney as the gunman in the video, evidence the State was unable to get in during the original trial. Moreover, presenting an alibi defense would not have resulted in a reasonable probability of an acquittal where the victim partially identified Toney as the gunman after reviewing over 500 photographs and Toney's fingerprints were on the document the gunman left at the scene. Accordingly, the Court finds counsel's decision not to call these witnesses was reasonable and Toney has presented no evidence to demonstrate otherwise. Therefore, relief on the claim in Ground Four is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Toney seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Toney "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Amended Petition (Doc. 22) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.      If Toney appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 4th day of November, 2020.

MARCIA MORALES HOWARD
United States District Judge

Jax-8

C:      Daniel Toney #J10564
        Holly Simcox, Esq.